## THOMAS F. CONAWAY *vs.* JAMES ODBERT.

### January Term, 1867.

1. A judgment obtained against a subsequent endorser is not conclusive against a prior endorser; but in order to make him responsible, where the subsequent endorser has paid the debt, his liability must be fixed as though no judgment had ever been obtained.

2. But when such liability is fixed, a security of the subsequent endorser in a forthcoming bond, is entitled to be substituted into the shoes of his principal to the extent of that liability; but before he can take the place of the judgment creditor, such creditor must be a party to the suit.

3. Where a forthcoming bond was given on an execution issued in contravention to the stay law, no advantage can be taken of this fact to defeat the question of substitution between sureties, or change the liability of endorsers; however much it may have been good ground for quashing the execution.

4. No assignment of a judgment will deprive a prior endorser of any rights and equities he may have or be entitled to, against a subsequent endorser.

5. It is error in a circuit court to decree the sale of land, unless it appears that the rents and profits will not satisfy the debt in five years.

6. It is error to decree the costs on a forthcoming bond where a subsequent endorser is trying to fix a liability on a prior endorser.

*Jonathan H. Haymond* executed a note to *Thomas F. Conaway* on the 25th day of February 1861, payable four months after date, negotiable and payable at the Fairmont Bank, in *Marion* county, in Baltimore funds. *Conaway* endorsed the same to *Enoch P. Fitch*, who endorsed it to *Shipley, Roane & Co.*, merchants of the city of *Baltimore*. The note not being paid at maturity was protested, and was paid off by *Shipley*.

*See page 1.
Judge *E. C. Bunker*, of the XI circuit, was called to the bench.

*Roane & Co.*, who brought suit thereon, in the district court for the western district of *Virginia*, and at the April term 1862, obtained judgment against *Fitch* for 1,402 dollars and 96 cents with interest from the 28th day of June 1861; the suit being dismissed as to *Haymond* and *Conaway* for want of jurisdiction.

They obtained leave to withdraw the original paper from the records of that court, and subsequently brought suit in the circuit court of *Marion* county against *Haymond* and *Conaway* and obtained judgment against them at the spring term 1862, for the same amount. An execution was issued on this latter judgment on the 15th day of February 1864, and returned "not executed by order of plaintiff's attorney."

An execution was issued from the clerk's office of the district court on the 14th day of May 1862, against the goods and chattels of *Fitch*, and one *Jesse J. Fitch* executed a forthcoming bond, with *James Odbert* as surety, conditioned for the delivery of certain property of *Enoch P. Fitch* purporting to be levied upon by virtue of the execution, to satisfy the judgment, and 27 dollars and 35 cents costs, and 50 dollars and 20 cents commission to the marshal of the district. On the 2nd day of October 1862, *Jesse J. Fitch* paid the attorney, *M. C. Goode*, of *Shipley, Roane & Co.* 1,609 dollars and 22 cents, the amount due on the forthcoming bond, and took his receipt; which sum he was furnished by *Odbert* the surety, as he subsequently stated, and which will be hereafter more fully explained.

At the November rules 1864, *Odbert* filed a bill in the clerk's office of the circuit court of *Marion* county against *Conaway*, and *Jesse J. Fitch*, administrator of *E. P. Fitch*, deceased, alleging the facts heretofore stated, and that at the time the forthcoming bond was executed *Enoch P. Fitch*, the brother of *Jesse J. Fitch*, was in the U. S. army, and at the time specified for the delivery of the property mentioned therein, neither *E. P. Fitch* nor *J. J. Fitch* delivered the same, nor could he, *Odbert*, find any such property of *E. P. Fitch* to deliver; and that the bond become forfeited and had the force of a judgment against him. That by reason of his

having been compelled to pay the debt as surety of *Fitch* he acquired the right to be substituted to all the rights, equities and liens of the plaintiffs *Shipley, Roane & Co.* against *E. P. Fitch*, and also against *Haymond* and *Conaway;* and inasmuch as *Haymond* as payor, and *Conaway* as payee and first endorser of the note, were liable over to *E. P. Fitch* as subsequent endorser, that when he was compelled to pay the amount of the claim, for *E. P. Fitch*, he immediately became substituted into the shoes of *E. P. Fitch*, and was entitled to all his rights and equities against *Conaway* and *Fitch*, independently of any assignment of the judgment or agreement to that effect; and that at the time he so paid the money for *E. P. Fitch* it was well understood that he was to have the benefit of each and both the judgments as fully as *Shipley, Roane & Co.* or *E. P. Fitch* could have; and that in pursuance of this understanding, *M. C. Goode*, attorney for *Shipley, Roane & Co.*, on the 3rd day of June 1864, assigned to him the judgment against *Haymond* and *Conaway*, and all liens created by the same; of which understanding *Conaway* had notice at the time of the payment. He further alleged that after paying the claim, he gave it into the hands of an attorney, *P. H. Keck, Esq.*, for collection, to whom *Conaway* frequently promised to pay it; but that *Conaway* finally refused to do so, and had colluded with one *George D. Evans* to cheat and defraud him out of his just rights in the premises, and had pretended to purchase of *Evans*, bonds and notes, due from *E. P. Fitch* to *Evans*, for a sufficient amount to cover the judgment, and claimed to be entitled to offset them against the claim of the orator. He charged that the bonds and notes were procured after the orator's equitable right of substitution accrued, and after *Conaway's* knowledge of that fact, and after his promises to pay him; and that the bonds and notes were not purchased by *Conaway* for a valuable consideration, but were procured as an experiment, to be accounted for to *Evans* only in the event of his being able to offset them against the orator's claim. That the bonds and notes if fairly purchased, were so purchased after the death of *E. P. Fitch*, and were claims against his

estate, and even upon the supposition that the judgment of
*Shipley*, *Roane & Co.* really belonged to *Fitch's* estate, it must
be paid to his administrator and by him be paid out accord-
ing to law, but he claimed that the judgment and liens cre-
ated thereby in equity, belonged to him, by rights and
equities created anterior to *Fitch's* death. He also alleged
that *Fitch's* estate was wholly insolvent, and that *Haymond*
was also insolvent and beyond the jurisdiction of the court.
He asked the defendants to say whether it was not the under-
standing at the time he paid the money that he was to have
the benefit of the judgments, all liens and equities created
thereby, in the same manner that *Shipley*, *Roane & Co.* were
entitled thereto; whether *Jesse J. Fitch* did not pay the
money of the complainant to *M. C. Goode*, the attorney for
*Shipley*, *Roane & Co.*, mentioned in the forthcoming bond;
and whether defendant *Conaway* did not know that the com-
plainant had been compelled to pay as surety of *E. P. Fitch*,
the recovery of the judgment, before he obtained the notes
or bonds from *Evans*, and whether he did not, before he
received or obtained them, promise the complainant in per-
son or his attorney to refund or pay the amount of his judg-
ment to the complainant or his attorney; when he received
the notes or bonds and what the compensation paid for them,
and whether there was not an agreement or understanding
between *Evans* and defendant that in the event he did not
succeed in effecting a set-off against the complainant's
claim, that he was to return them to *Evans*. He asked that
he be substituted into the shoes of *Shipley*, *Roane & Co.* and
*E. P. Fitch*, and all the rights and liens created against *Con-
away* or *Fitch*, as of the 2nd day of October 1862, and that
the real estate of *Conaway* be decreed to be sold to reimburse
the complainant.

*Conaway* answered at the December term 1864, after hav-
ing demurred to the bill, which was overruled, confessing
that he endorsed the note as alleged in the bill, and also that
judgments had been obtained as asserted by the complain-
ant; that he endorsed the note for the accommodation of
*Haymond* and *Fitch*, and not for the purpose of profit or

gain to himself; he did not admit the legality of the execution issued by the district court, because there was a stay law in operation at the time of its date, and also because *Fitch* was in the army of the United States; he also averred that the law did not permit or recognize any other party as a proper one to give a forthcoming bond except the debtor, and if the complainant paid the amount of any execution issued thereon, as the surety of *Jesse J. Fitch*, it was a voluntary payment and he could not call on respondent to be reimbursed therefor; but that he was informed and believed that *E. P. Fitch* had furnished the money to pay the same; that he held a claim against *Fitch* prior to his death, and that he had said, after learning that *Fitch* had paid off the judgment, that he would settle it with him, meaning thereby that he would adjust it with *Fitch*, but he had not nor never did recognize the complainant in the matter; that he held claims against *Fitch* more than sufficient to extinguish the amount of the judgment and insisted on the same as an off-set against it; that he held a bond against said *E. P. Fitch*, assigned to him by *George D. Evans* on the 5th day of May 1864, that it was for the sum of 1,425 dollars and 37 cents with interest from the 22nd day of May, 1852, and that he paid a valuable consideration for it, and it was properly a set-off against the judgment; he denied the right of the complainant to inquire of him as to the consideration he paid for the·bond, as it was irrelevant; he further denied having any understanding about the debt with the complainant, and did not admit his liability as endorser; he then gave a list of his real property as required by the bill; he further stated that he was informed and believed that *E. P. Fitch* by his agent paid off the debt and took a receipt from the attorney of *Shipley, Roane & Co.*, and that afterwards the complainant got possession of the receipt and took it to the *then late* attorney of *Shipley, Roane & Co.*, and prevailed on him to cancel the receipt and give him an assignment of the judgment; he claimed that the attorney had no power over the claim after he had collected the debt and paid over the money, and no authority to assign the payment; and the same was a void

act; and that he had no power to cancel the receipt without the consent of *Fitch* and *Shipley, Roane & Co.*, which had never been given. He further insisted that the moment the judgment in the district court was discharged, it operated as a full discharge of the judgment in the circuit court of *Marion* county, and no after act of any of the parties could revise it, and that the complainant not having shown himself connected with *E. P. Fitch*, had no rights that the court could entertain, either against *Fitch's* estate or the respondent.

The complainant excepted to the answer for not being sufficiently full in answer to interrogatories, which was sustained, and the defendant *Conaway* was required to answer more fully.

At the September term, 1865, he filed an amended answer, stating that he was to give *Evans* 1,500 dollars for the bond of *Fitch* purchased by him, and gave his notes for the same payable in three equal installments; that he purchased the same with the view of making the money on it, and insisted on it as a set-off, and that he expected to recourse on *Evans* if it was not allowed, or he could not make it out of the estate of *Fitch*; that he regarded the purchase from *Evans* as a valid one; that he had been informed that the negotiable note originally sued on was in fact executed for the accommodation of *Fitch*, and that he was principal therein, and got the benefit of the money raised on it.

The assignment of the judgment by *M. C. Goode*, and which was endorsed on the back of an attested copy taken from the judgment docket of *Marion* county, was in the following words: "I assign the within judgment and all liens thereby created, to *James Odbert* of *Monongalia* county, *West Virginia*, said claim having been paid by said *Odbert* through *J. J. Fitch*, October 2nd, 1862, upon a F. C. Bond given or execution issued from District Court of U. S. for Western District of Virginia—June 3rd, 1864.

                    *Shipley, Roane & Co.*
          By *M. C. Goode*, their attorney."

The deposition of *Jesse J. Fitch*, stated that in the spring

of 1862, the marshal of the U. S. court came to *Morgantown* with an execution against his brother *E. P. Fitch*, for a sum over 1,400 dollars, in favor of *Shipley, Roane & Co.*; that his brother was absent in the U. S. army, that he attended to his brother's business while he was so absent; the complainant agreed to go into a forthcoming bond, which was accordingly given, the complainant being security; the bond was forfeited, and witness told complainant if he would pay it off, he would write to his brother *E. P. Fitch*, and get him to arrange it; witness was doing business for complainant at the time and had money belonging to him in his hands, which he directed him to take and pay off the judgment on the forfeited bond, which he did, and paid it to *M. C. Goode*, attorney for *Shipley, Roane & Co.* Witness took receipt in the name of his brother *E. P. Fitch*, because, he stated, that in taking it any other way his brother as subsequent endorser would have lost the lien against defendant *Conaway*, as a prior endorser; *Goode*, the attorney, told witness that *Shipley, Roane & Co.* had obtained judgment against *Conaway* and *Haymond* in *Marion* county, and that he would have the judgment assigned or transferred any time when requested so to do, and thus give the party paying it the benefit of the lien. As administrator of *E. P. Fitch*, negotiable notes, due bills, &c., in favor of said *Fitch* against *George D. Evans* came to his hands, but he knew nothing of them except what appeared on their face; (these notes, &c., were of various dates and payable at several banking houses, amounting in the aggregate to several thousand dollars; nothing further appeared, concerning them, in the cause;) witness solicited complainant to go on the forthcoming bond in behalf of his brother *E. P. Fitch*, who was absent, and without any special solicitation from him to that effect. *E. P. Fitch* died about the 31st of May, 1864; witness had no authority in writing to attend to his brother's business.

The deposition of *P. H. Keck*, stated that in June, 1862, at the instance of *Jesse J. Fitch* and as counsel for *E. P. Fitch* he opened a correspondence with defendant *Conaway* in relation to the judgment of *Shipley, Roane & Co.* with

reference to *Conaway's* primary liability as first endorser of the note, and that he conducted it as counsel of *E. P. Fitch*; that he received a number of letters from him in relation to the matter, and that the purport of them all was that he would settle and pay the claim, down to January, 1864; two letters were filed with his deposition dated, respectively, August 2nd, and August 17th, 1862; the first stated, that he was anxious to settle the matter, and would make an effort to do so without suit; that if he could see *Mr. Fitch* he thought the matter could be arranged; the second stated as follows: "In answer, I will say that I will pay the larger portion of the money within four months, and the balance in a short time, if this will suit," and reiterated that he did not wish a suit. It further stated that he did not mention complainant *Odbert's* name in the matter, to the defendant, until January, 1864, that his reason for not doing so was that *Odbert* was merely security in the forthcoming bond; that until the time the money was paid in October, 1862, the correspondence was at the instance of *E. P. Fitch*, but after that time it was at the instance of complainant *Odbert;* that after January, 1864, witness had two personal interviews with *Conaway*, in which he was informed by him that the money was due *Odbert*, and he promised to pay him in a short time; that afterward in reply to a letter on the subject he stated that he did not owe *Odbert* anything, and as to *Fitch* he had claims enough in his hands to off-set any indebtedness to him.

The deposition of *M. C. Goode* stated in substance, that he gave a receipt to *Jesse J. Fitch* who paid him the amount of the debt in the execution, and that he subsequently assigned the judgment as before shown.

The defendant *Conaway* filed depositions of *Howard* and other parties in *Baltimore*, tending to show that *E. P. Fitch* was the beneficiary party in the original negotiable note and received the money therefor.

At the October term, 1865, the circuit court of *Marion* rendered a decree substituting the complainant *Odbert* to all the rights, liens and equities of *Shipley, Roane & Co.* against

defendant *Conaway*, and decreed the sum of 1,609 dollars and 22 cents with interest thereon from October 2nd, 1862, and costs, against him. It also provided that if he did not pay off the sum decreed in ninety days that a commissioner named should sell so much of his real estate as would be sufficient to satisfy it, under the usual conditions.

*Conaway* appealed to this court.

*Lee* and *Edmiston*, for appellant, insisted on the following points, which were made in the petition for an appeal:

1. Upon the pleadings and proofs in the cause, no case is made entitling the complainant to the relief afforded him by the said decree, on the principle of substitution, or any other principle of the Court of Equity.

The relation existing between *Conaway* the payee and first endorser of the note, and *E. P. Fitch* as subsequent endorser, was not such relation of principal and surety as would have entitled *E. P. Fitch*, if he had paid the judgment in the Federal Court, to which *Conaway* was not a party, to be substituted to the lien of a separate judgment in the State Court against him, to which *E. P. Fitch* was no party, and the complainant coming in under him could stand in no better position.

2. The complainant, in giving the forthcoming bond, and paying the amount of the same (if he did pay it,) was a mere volunteer. He gave the bond in the absence and without the knowledge or consent of *E. P. Fitch*, who was in the military service of the United States, and was not at the time, under the law, liable to the execution. By such voluntary action on his part, appellee could not constitute himself a creditor of either *E. P. Fitch* or *Conaway*.

3. If appellee paid the amount of the forthcoming bond, he paid it as the surety of *J. J. Fitch*, who was the principal therein, and he acquired by such payment no equity as against *E. P. Fitch*, and still less as against *Conaway*, who was no party to the judgment.

4. The execution against *E. P. Fitch* was invalid and illegal, being forbidden both by the Stay Law, then in force,

and by the act protecting persons in the military service of the United States, against the levy of executions upon their property.

5 . There is no proof that the execution was levied upon the property of *E. P. Fitch*. The execution and return thereon, are not exhibited in the bill, nor given in evidence; and the mere recital in the forthcoming bond given by *J. J. Fitch* as principal, with appellee as surety, that the execution had been levied on property, without saying whose property, is no evidence of such a levy, either as against *E. P. Fitch* or *Conaway*.

6. It is plain, from the evidence of *Howard*, that the note was discounted for the benefit of *Haymond* and *E. P. Fitch*, and that the latter participated in the proceeds. He, or the appellee coming in under him, can therefore make no valid demand upon *Conaway* as a surety for *E. P. Fitch* founded upon his endorsement.

7. The cancellation of the receipt given by the attorney of *Shipley, Roane & Co.*, and the pretended assignment of the judgment which the attorney undertook to make, some twenty months after the same had been fully satisfied, was unauthorized and invalid, and cannot in any respect strengthen the appellee's case, especially as it was made after the assignment of *E. P. Fitch's* bond to *Conaway* by *Evans*.

8. The promises to settle the matter proven to have been made by *Conaway*, were evidently made under the belief that the claim was preferred on behalf of *E. P. Fitch*, and without the knowledge of the pretended equity of appellee.

9. The court erred in disallowing the off-set claimed for the amount of *E. P. Fitch's* bond assigned by *Evans*. *Conaway* was called upon by the bill to disclose the facts relating to this offset. His answer is fully responsive, and is evidence for him. He acquired this claim *in the lifetime of E. P. Fitch*, as it was assigned for value on the 4th day of May, 1864, and *Fitch* died about the 31st day of that month. He denies notice of pretended equity of complainant when he took the

assignment, and none is proven. The offset was a valid one, and should have been considered and allowed by the court.

10. It was error for the court to decree against *Conaway*, in the state of parties before the court. Neither *J. H. Haymond*, the principal debtor, nor *J. J. Fitch*, in his own right as principal in the forthcoming bond, nor *Shipley, Roane & Co.*, the judgment creditors, were made parties in the cause. They should have been before the court.

11. The court erred in decreeing against *Conaway*, for the gross amount of the principal, interest and costs in the Federal Court, both of the suit upon the note, and of the motion on the forthcoming bond, including the interest on the interest and costs named in the judgment on the note. *Conaway* was no party to the judgment in the Federal Court and was not liable for any of the costs of that court; and if liable at all, was only liable to the principal for the judgment in the *Marion circuit court*, with continuing interest until paid, and the costs of that court.

12. It was error to decree a sale of *Conaway's* land under the judgment lien, in the absence of any allegation or proof that the rents and profits would not keep down the interest and pay the principal within five years, and without any inquiry upon that subject; and this especially, as from the allegations of the answer upon this subject, the rents would have been sufficient to discharge both principal and interest within five years.

*P. H. Keck*, for the appellee.

MAXWELL, J. The appellee claims the right to be substituted to all the rights of the administrator of Enoch P. Fitch, deceased, as well as to all the rights of Shipley, Roane & Co., as against the appellant Conaway as the first endorser of the negotiable note made by Haymond and endorsed by Conaway and Fitch. He claims that the judgment in the circuit court of *Marion* county, in favor of Shipley, Roane & Co. against Conaway and Haymond, is conclusive against

the said Conaway in favor of the administrator of the said Fitch.

I think there is no doubt but that Odbert is entitled to be substituted to all the rights and remedies of the administrator of the said Fitch as against the said Conaway, but being substituted to these rights and remedies, what are they? Has the administrator of Fitch if he had paid the judgment on the forthcoming bond in the Federal Court, the right to be substituted to the place of Shipley, Roane & Co. as to the judgment against Conaway and Haymond? I understand the rule to be that a surety paying the debt of his principal is entitled to be substituted to all the liens, sureties, rights and remedies of the creditor against such principal debtor, subsisting, at the time he became bound for the debt. Story's Equity Jurisprudence, sec. 499; *Powell* vs. *White*, 11 Leigh, 309; *Robinson et als.* vs. *Sherman et als.*, 2 Gratt., 178.

A co-surety paying the debt of his principal debtor is entitled to contribution against his co-surety and is entitled to all the liens, securities, rights, and remedies of the creditor against such co-surety to the extent of the relief that he is entitled to, but no further.

In this case Conaway and Fitch were not co-sureties for Haymond, but separate sureties, with a contingent liability, each separate and distinct from the other, jointly liable, it is true, to the holder of the note endorsed by them, but as between themselves standing on their separate and distinct contracts, in which one may be liable and the other not liable. I think Conaway is not concluded by the judgment of Shipley, Roane & Co. against him, but as against him his subsequent endorser must fix his liability as fully as if there had never been any judgment against him. If this is not so he would be deprived of the right to show he was a mere accommodation endorser for the benefit of Fitch, and that no consideration for his endorsement passed, which would be a good defence to him. 2 Parson on Notes and Bills, 27.

He would be deprived of his right to raise objections to the consideration or want of consideration for the endorsement, to show setoffs and equities against Fitch, to all of

which he is entitled under the law. *Galliot* vs. *Lynch*, 2 Leigh, 503; *Barker* vs. *Prentiss*, 6 Mass., 432; *Pearson* vs. *Pearson*, 7 Johns., 28; *Herrick* vs. *Carman*, 10 Johns., 225; *Schoonmaker* vs. *Roasa*, &c., 17 Johns., 301.

Any rule that would make the judgment against Conaway and Haymond conclusive in favor of Fitch would make the judgment against Fitch conclusive in favor of Conaway, and if Conaway had paid the judgment against himself would entitle him to be substituted to the place of Shipley, Roane & Co. in their judgment against Fitch, and thus enable Conaway to escape his liability as prior endorser which could not be done in that way.

But when such liability is fixed against Conaway I see no reason why Odbert, being substituted to the rights and remedies of Fitch, might not be substituted to the place of Shipley, Roane & Co. as against Conaway, to the extent of said liability. But before this could be done Shipley, Roane & Co. would have to be made parties to the suit, which has not been done.

I do not think there is anything in the objection that the forthcoming bond was void because it was founded on an execution issued at a time when it should not have been. This would probably have been sufficient cause to quash the bond if the objection had been made before judgment was rendered on it, but it is too late now.

I do not think that Odbert is protected by the supposed assignment to him of the judgment against Conaway, because in the first place, Shipley, Roane & Co. are not parties to the suit; and in the next place if they were parties and the assignment regular in form it seems to me that it is not sufficient to deprive Conaway of his rights as against Fitch before referred to; in other words that the assignment of the judgment to Odbert would place him in a better situation than he would be in without it.

I think the court erred in not setting off the bond of Fitch held by the said Conaway, against the demand of Odbert, unless the said bond was subject to counter setoffs, as appears

to be indicated by the deposition of Jesse J. Fitch, and as to which fact there should have been inquiry.

The court erred in decreeing the sale of the land of Conaway, when it does not appear that the rents and profits thereof will not satisfy the judgment in five years.

If it was proper to render a decree for any sum the amount of the decree is greater than it should be, by the amount of the costs on the forthcoming bond.

I am of opinion that the decree complained of ought to be reversed, and the cause remanded for further proceedings to be had therein on the principles herein indicated.

The remaining judges concurred with Maxwell, J.

DECREE REVERSED.